**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **JAMES MCCOY**<br>***Individually and on behalf of all others similarly situated,***<br><br>**Plaintiff**,<br><br>v.<br><br>**LOWE'S COMPANIES, INC.,** ***a North Carolina Corporation***<br><br>**Defendant**. | CASE NO. 5:26-cv-2156<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff James McCoy, ("Plaintiff" or "McCoy") individually and on behalf of the Classes defined herein of similarly situated consumers, brings this class action suit for damages and equitable relief against Lowe's Companies, Inc. ("Defendant" or "Lowe's").

Plaintiff alleges the following based upon personal information as to allegations regarding himself and the investigation of his counsel, and on information and belief as to all other allegations.

## INTRODUCTION

1. Beginning in February 2025, President Trump issued a series of executive orders invoking the International Emergency Economic Powers Act, 50 U.S.C. § 1701 et seq. ("IEEPA") to impose new and significant tariffs on imports from nearly every foreign country, including those from which Lowe's sources products.

2. The Trump administration is now in the process of refunding billions in tariff revenue after the Supreme Court struck its most sweeping tariff policy down, reporting in an August 2026 court filing that it has so far refunded $100 billion of the approximately $166 billion it's set to give back in total. That's resulted in some of the country's biggest companies and importers receiving millions in tariff refunds in recent months, with companies including Apple, Nike, GM and more reporting nine-figure refunds last quarter that have boosted their bottom lines.

3. U.S. retailers reported receiving more than $5 billion in federal tariff refunds in earnings reports released thus far, as the Trump administration undoes its signature tariff policy and pays back the money it took in—but despite studies showing that consumers bore the brunt of the initial tariff costs, companies are still largely keeping the windfalls for themselves. In earnings calls with investors, retail executives have largely suggested they intend to invest their tariff refund revenue back into their companies, rather than passing it on to shoppers who paid higher prices when tariffs went up, though some have committed to lowering prices.

4. The New York Federal Reserve reported in February 2026 that approximately 90% of the tariffs' "economic burden" has been felt by U.S. firms and consumers, including tariffs

getting passed on to consumers in the form of increased prices.[1] The bank previously found in 2025 that approximately three-quarters of businesses surveyed passed tariff costs onto consumers in some form,[2] and the Yale Budget Lab estimates the Trump administration's tariff policy—which includes other tariffs beyond the ones now being refunded—is raising each household's annual costs by approximately $1,100 per year as of August 2026.[3] A working paper published in the National Bureau of Economic Research in July 2026 similarly estimated 26% of the government's tariff increases were passed through via higher prices.[4] Those price increases are expected to continue, with the New York Federal Reserve reporting nearly half of the companies it surveyed in May 2026 were still planning additional tariff-related price bumps.

5. This class action arises from Lowe's' retention of windfall profits generated by the unlawful tariffs imposed by the Trump Administration under the IEEPA. This windfall is a direct result of Lowe's systematically passing on a percentage of the costs of IEEPA tariffs to its own customers. Indeed, Lowe's has already received $80 million in IEEPA tariff refunds in fiscal Q2 2026, and is poised to apply for much more.[5]

6. At the company's August 19, 2026 earnings call, management announced the "Fiscal year 2026 outlook also includes tariff refunds recognized during the second quarter []",[6] reporting net earnings of $2.4 billion and diluted earnings per share (EPS) of $4.27 for the quarter ended July 31, 2026, compared to diluted EPS of $4.27 in the second quarter of 2025. During the second quarter ended July 31, 2026, the company recognized $96 million in pre-tax expenses associated with the acquisitions of Foundation Building Materials (FBM) and Artisan Design Group (ADG).

---

[1] https://www.wsj.com/opinion/donald-trump-tariffs-consumers-new-york-federal-reserve-study-95bed1bc
[2] https://libertystreeteconomics.newyorkfed.org/2025/06/are-businesses-absorbing-the-tariffs-or-passing-them-on-to-their-customers/
[3] https://budgetlab.yale.edu/research/state-us-tariffs
[4] https://www.nber.org/papers/w35561
[5] https://finance.yahoo.com/economy/policy/articles/lowe-gets-80m-tariff-refund-110500300.html
[6] https://corporate.Lowe's.com/newsroom/press-releases/Lowe's-reports-second-quarter-2026-sales-and-earnings-results-08-19-26

Excluding these expenses, second quarter 2026 adjusted diluted EPS increased 1.6% to $4.40 compared to the prior-year adjusted diluted EPS. Both diluted EPS and adjusted diluted EPS1 *include an $0.11 benefit from IEEPA tariff refunds*.[7]

7. Rather than jumping into a price war this summer, Lowe's directed its $80 million in tariff refunds toward protecting profit margins and covering rising operational costs. This financial flexibility helped absorb "elevated fuel, transportation, energy and other input costs" to maintain profitability, Lowe's CEO and Chairman Marvin Ellison said during the second-quarter earnings call.[8] Lowe's chose to channel its funds into long-term strategic investments, Ellison said. Lowe's $80 million represents a small portion of the overall tariff refunds the company expects to receive, Ellison told local reporters following the earnings call. Ellison said the company does not yet know the total amount it will get. "We are moving through the filing process for additional refunds," Lowe's CFO Brandon Sink told analysts. Lowe's officials expect to receive the remaining funds that were paid over the last year to 18 months by the end of the year. Ellison pledged transparency regarding how the money will be used.[9]

8. Ellison added the $80 million tariff refund could be just a fraction of what the retailer ultimately receives. The home-improvement retailer says that amount reflects a small portion of the total tariffs it paid over the last 12 to 18 months. Lowe's declined to share a total amount paid in tariffs or how much it expects to receive. The company is pursuing additional refunds, with a payout possible in the second half of the year. Ellison says Lowe's will be transparent about the amount received and how the refunds are used.[10]

9. This particular dispute stems from Lowe's statements and actions around a structural inequity in the tariff refund process. While the importer of record is the only party that may

[7] Id.
[8] https://billingsgazette.com/article_348516f9-63a9-4fd3-b0a0-1ff5f9490283.html
[9] Id.
[10] Id.

recover a refund from the government for an improperly assessed tariff, the importer is often nothing more than a pass-through vehicle. Frequently, the importer simply fronts the cost of the tariff and recovers a percentage of the cost by imposing higher prices on consumers. The consumer, for all intents and purposes, pays a percentage of the tariff.

10. On February 20, 2026, the Supreme Court held that the subject tariffs were unlawful. *Learning Res., Inc. v. Trump*, 607 U.S. ____, Nos. 24-1287, 25-250, 2026 WL 477534, at *13–14 (U.S. Feb. 20, 2026). And yet, even when the Supreme Court strikes down an unlawful tariff, the truly injured parties possess no direct avenue for redress. American consumers who bore part of the economic burden of these tariffs possess no statutory cause of action in the Court of International Trade ("CIT") — only the importer of record has standing to seek a refund, regardless of who ultimately paid. Large corporations, even if they were to pass on 100 percent of the tariff burden onto customers, remain fully empowered to recover a complete refund for any unlawful tariffs they paid.

11. This is no hypothetical. Over 2000 companies have filed lawsuits in the CIT, actively seeking refunds for every cent of their IEEPA tariff bill and the CIT has recently announced an administrative procedure to refund the unlawful tariffs without the need to file a lawsuit. Nonetheless, Lowe's has not proposed returning the amount of these tariffs that were previously recovered through price increases to its customers. This despite estimates from Goldman Sachs that U.S. consumers are "shouldering two-thirds of President Trump's new tariff costs."[11] Bottom line: Lowe's intentionally refuses to refund its customers those tariff surcharges.

12. Lowe's ranks No. 52 on the Fortune 500 list of the largest U.S. corporations, reporting an

[11] Nick Lichtenberg, Goldman Sachs doubles down on tariff research that infuriated Trump, saying average Americans will bear two-thirds of the costs, FORTUNE (Aug. 13, 2025), https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/.

annual revenue of $86.3 billion. This lawsuit seeks to prevent Lowe's from inequitable recovery. Plaintiff seeks a judgment that Lowe's is obligated to return to Plaintiff and proposed Class Members all IEEPA duties passed on to customers in the form of higher prices on products, with interest.

13. Plaintiff and the Classes are entitled to restitution of the tariff overcharges they paid, or a proportionate share of any tariff refunds Lowe's recovers, together with interest, reasonable attorneys' fees, and costs.

**PLAINTIFF**

14. Plaintiff James McCoy is a resident of this District, residing at 6801 Garrett Road, Ravenna, Ohio 44266.

15. Mr. McCoy is a Lowe's customer. Within the Class Period, Mr. McCoy purchased various products from Lowe's as a consumer for personal projects. Upon information and belief, many of these products were imported from countries subject to IEEPA tariffs, at prices inflated by Lowe's 's pass-through of IEEPA tariff costs.

**DEFENDANT**

16. Defendant Lowe's Companies, Inc. is a North Carolina corporation, publicly traded under the NYSE ticker symbol "LOW," with its principal place of business at 1000 Lowe's Boulevard, Mooresville, NC 28117.

**JURISDICTION AND VENUE**

17. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from Lowe's.

18. This Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Lowe's obligation to return to the consumers who paid them the IEEPA tariff surcharges, as well as any IEEPA refunds Lowe's recovers from the United States.

19. This Court has personal jurisdiction over Lowe's because it conducts continuous and systematic business in the state of Ohio, ships goods to and from Ohio on a daily basis, maintains operational facilities and employees in Ohio, and collected the unlawful IEEPA tariff surcharges from Plaintiff and proposed Class members within this District.

20. Venue is proper in this District under 28 U.S.C. § 1391(b) because Mr. McCoy resides in this District, and a substantial portion of the events giving rise to this action occurred in this District, including Plaintiff's purchases of tariffed goods at a Lowe's retail store in Ohio.

## NATURE OF THE ACTION AND FACTUAL BACKGROUND

### *a. The IEEPA Tariffs and Their Invalidation*

21. Beginning in February 2025, the President issued a series of executive orders invoking IEEPA to impose new tariffs on goods imported from nearly every foreign country. These included tariffs of 25% on imports from Canada and Mexico (Exec. Orders 14193[12] & 14194[13]), escalating tariffs on imports from China reaching as high as 145% (Exec. Orders 14195[14], 14228[15], 14259[16], and 14266[17]), and a baseline 10% tariff on nearly all other imports under the "reciprocal tariff" order of April 2, 2025 (Exec. Order 14257[18]), with higher

---

[12] Exec. Order No. 14193, Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9,113 (Feb. 7, 2025).
[13] Exec. Order No. 14194, Imposing Duties To Address the Situation at Our Southern Border, 90 Fed. Reg. 9,117 (Feb. 7, 2025).
[14] Exec. Order No. 14195, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,121 (Feb. 7, 2025).
[15] Exec. Order No. 14228, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 11,463 (Mar. 7, 2025).
[16] Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China, 90 Fed. Reg. 15509 (Apr. 14, 2025)
[17] Exec. Order No. 14266, Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025).
[18] Exec. Order No. 14257, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

country-specific rates ranging from 11% to 50% on 57 countries.

22. On February 20, 2026, the Supreme Court invalidated all IEEPA-based tariffs in a 6-3 decision. The Court stated: "We hold that IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 607 U.S. ___(2026) (slip op. at 20).

23. CBP announced on February 22, 2026 that IEEPA duty collection would cease effective February 24, 2026.

***B. Lowe's Business Model***

24. Lowe's is one of two national big-box leaders in U.S. home improvement retail. Founded in 1921 and headquartered in Mooresville, North Carolina, the company sells building materials, tools, appliances, décor, paint, lawn and garden products, and installation services through about 1,750 stores, Lowe's.com, and a national delivery network. In fiscal 2024, which ended January 31, 2025, Lowe's generated approximately $83.7 billion of revenue. The company now operates almost entirely in the United States after exiting its Canadian retail business, a move that sharpened its focus on U.S. homeowners, professional contractors, and property-management customers.[19]

25. Lowe's strategy is less about rapid new-store growth and more about taking share in a very large repair, maintenance, and remodeling market. Public company materials consistently point to several priorities: growing penetration with professional customers, improving omnichannel convenience, strengthening private and exclusive brands, modernizing supply chain and delivery, and driving productivity in stores and support functions. That mix matters because discretionary DIY big-ticket demand can be cyclical, while Pro, maintenance, and Maintenance, Repair, and Operations (MRO) demand tends to be more repeat driven. Lowe's is best understood as a store-based, omnichannel distributor of home-improvement products and services, not just a traditional retailer.[20]

[19] https://umbrex.com/resources/company-profiles/Lowe's/
[20] Id.

### *C. Lowe's 's Response to the IEEPA Tariffs*

26. Although they may be nominally directed extraterritorially, the increased costs created by the subject tariffs are borne almost entirely by U.S. importers and consumers.[16] Researchers studying recent tariffs estimate that approximately 96% of the tariff cost burden is passed through to American consumers.[21]

27. While importers must pay the subject tariffs at the border, wholesalers, manufacturers, and retailers all face a choice: whether to absorb the burden of the subject tariffs or to pass that burden on to their customers.[22] In most cases, including in the case of Lowe's, part of the burden of tariffs is eventually passed through to U.S. consumers through retail price increases.[23]

28. Throughout the Class Period, Lowe's paid IEEPA tariffs to CBP. Lowe's, like most U.S. firms, passed part of the tariff burden onto consumers through elevated retail pricing. Lowe's 's gross margin data during the tariff period reflects its ability to sustain and expand margins while consumers bore increased costs.

29. Lowe's was able to increase the price of tariffed goods during the peak of the IEEPA tariff regime by selectively raising prices on tariffed goods. The higher prices consumers paid were a consequence of Lowe's 's increased cost of importation. Absent the imposition of the unlawful IEEPA tariffs, Lowe's would not have needed to raise prices on consumers in this way.

30. Subsequent to the Supreme Court's landmark decision invalidating tariffs imposed under the IEEPA, the U.S. Court of International Trade (CIT) ordered U.S. Customs and Border Protection (CBP) to remove IEEPA duties from all affected entries. In an order issued March 4, 2026, in *Atmus Filtration, Inc. v. United States* (Ct. No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.)[21], the CIT directed CBP to liquidate all unliquidated entries without IEEPA duties and to reliquidate any entries not "finally liquidated" without IEEPA

---

[21] Julian Hinz, et al., America's Own Goal: Who Pays the Tariffs? Kiel Inst. for the World Econ. (Jan. 19, 2026), https://www.kielinstitut.de/fileadmin/Dateiverwaltung/IfW-Publications/fis-import/92fb3f30-07b8-4dcf-b2bcfbefb831f1a1-KPB201_EN.pdf .

[22] Id. At 7.

[23] Id.

duties. Under the *Atmus* Order, Lowe's is entitled to a refund of the IEEP tariffs ("All importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision.").

31. According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at 6. Upon information and belief, Lowe's is entitled to as much as $1 Billion dollars in refunds.

32. As a direct result of Lowe's tariff pass-through pricing, Class Members paid more for tariffed goods than they would have paid absent the unlawful IEEPA tariffs. Unless the Court intervenes, Lowe's will be paid twice for the same unlawful tariff burden: once by its customers (through elevated prices) and once by the U.S. government (through tariff refunds).

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action on behalf of himself, individually, and on behalf of all others similarly situated (the "Nationwide Class") as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3), and (c)(4).

34. The Nationwide Class is initially defined as follows:

> **All persons who purchased, from any Lowe's retail channel, any good subject to the tariffs imposed under IEEPA, during the period February 1, 2025 through February 24, 2026.**

35. Additionally, pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3), and (c)(4), Plaintiff brings this action on behalf of the following Ohio Class initially defined as:

> **All persons in the state of Ohio who purchased, from any Lowe's retail channel, any good subject to the tariffs imposed under IEEPA, during the period February 1, 2025 through February 24, 2026.**

36. The Nationwide Class and the Ohio Class are referred to herein as "Classes," unless otherwise stated.

37. Excluded from the Classes are: (a) Defendant; (b) subsidiaries and affiliates of Defendant; (c) any person or entity who is an officer, director, employee, or controlling person of Defendant; (d) any entity in which Defendant has a controlling interest; (e) the legal

representatives, heirs, successors, and assigns of any excluded party; and (f) any judicial officer presiding over this action, the members of his or her immediate family and staff, and any juror assigned to this action.

38. The Class Period is February 1, 2025 through February 24, 2026. Plaintiff reserves the right to amend or modify the class definition(s) with greater specificity, by further division into subclasses, and/or by limitation to particular issues. As described below, the Class satisfies the elements of Fed. R. Civ. P. 23(a) and (b).

39. ***Numerosity***. The Members of the Class are so numerous that joinder of all Members is impracticable. As alleged, Lowe's operated 1,750 stores in fiscal 2024, and almost all were in the U.S. and its territories. Lowe's sells millions of products each month, and upon information and belief, there are several millions of people in the proposed Class.

40. ***Typicality***. Plaintiff's claims are typical of the claims of the Members of the Class. Throughout the Class Period, Mr. Meloy purchased various commercial and consumer products from Lowe's that were imported from countries subject to IEEPA tariffs, at prices inflated by Lowe's 's pass-through of IEEPA tariff costs. Plaintiff's claims are also typical of the other Class Members in that Plaintiff has been damaged as a result of paying an unfairly elevated price to Lowe's.

41. ***Adequacy***. Plaintiff will fairly and adequately protect the interests of the putative Class and has retained counsel competent and experienced in class action litigation. Plaintiff is committed to the vigorous prosecution of this action and has no interests that are adverse or antagonistic to the Class.

42. ***Superiority***. A class action is superior to any other available means for the fair and efficient adjudication of the Classes' claims. The damages suffered by certain individual Members of the Class are relatively small compared to the burden of individual prosecution of the complex litigation required to recover from Lowe's. It would be impractical for most, if not all, Class Members to seek relief on an individual basis. Furthermore, individual litigation could result in thousands of individual lawsuits, introducing the risk of inconsistent judgments and increasing the delay and expense to all parties. In contrast, a class action would present far fewer administrative difficulties. The Members of the Class are ascertainable through methods typical of class action practice and procedure, including

through Lowe's 's own transactional records.

43. ***Predominance of Common Questions of Law and Fact***. Numerous questions of law and fact are common to Plaintiff and all Members of the Class. These common questions will result in common answers for all Class Members that will impact the resolution of the claims on grounds equally applicable to all Class Members. These common questions, which predominate over any questions affecting only individual Class Members, include, but are not limited to:

a. Whether a portion of the higher prices that consumers paid for Lowe's products are attributable to the cost of IEEPA tariffs;

b. Whether Lowe's is obligated to return IEEPA duties to the consumers who paid them in the form of higher prices;

c. Whether Lowe's retention of elevated consumer payments constitutes unjust enrichment;

d. Whether Lowe's acted unfairly or deceptively by up-charging consumers in response to tariff-related costs while failing to reimburse consumers upon learning the tariffs were illegal;

e. Whether Lowe's conduct constitutes an unfair practice under the consumer statute;

f. Whether Lowe's conduct has harmed Plaintiff and the Class uniformly;

g. The measure of damages available to Plaintiff and the Class due to increased prices caused by Lowe's tariff pass-through; and

h. Whether restitution is the appropriate measure of relief, and if so, the appropriate amount.

44. ***Rule 23(b)(2) Class Certification***. Lowe's has acted in a manner that applies generally to the proposed Class, making both declaratory and injunctive relief appropriate with respect to the proposed Class as a whole. Lowe's decision to raise prices on goods subject to IEEPA duties, and then to seek a blanket refund from the government without committing to establish any customer refund mechanism, warrants class-wide declaratory and injunctive relief.

## COUNT I

***Violation of the Ohio Consumer Sales Practices Act ("OCSPA") (R.C. 1345, et. set.)***

*(On Behalf of Plaintiff and the Ohio Class Only)*

45. Plaintiff incorporates the foregoing allegations in this complaint as if fully set forth herein.

46. The Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.01 et seq., prohibits suppliers from committing unfair or deceptive consumer sales practices in connection with a consumer transaction.

47. Plaintiff and each Class Member is a "consumer" within the meaning of R.C. § 1345.01(D), having purchased goods from Lowe's for personal, family, or household purposes.

48. Lowe's is a "supplier" within the meaning of R.C. § 1345.01(C), regularly engaged in the business of selling consumer goods to Ohio residents.

49. Plaintiff, the Class Members and Lowe's engaged in a "Consumer Transaction" as that term is defined under the OCSPA. Each purchase of tariffed goods by an Ohio Class Member from any Lowe's retail channel during the Class Period constitutes a "consumer transaction" within the meaning of R.C. § 1345.01(A).

50. The OCSPA prohibits a supplier from committing an unfair or deceptive act or practice in connection with a consumer transaction, whether it occurs before, during, or after the transaction. That "after the transaction" language is critical — it expressly reaches post-sale conduct such as a refusal to process a refund for an improper charge. The supplier's retention of money it was not entitled to collect is itself the unfair and deceptive act.

51. R.C. §1345.03(B)(7) specifically enumerates as an unconscionable factor "whether the supplier has, without justification, refused to make a refund in cash or by check for a returned item that was purchased with cash or by check, unless the supplier had conspicuously posted in the establishment at the time of the sale a sign stating the supplier's refund policy." This provision is directly on point where a supplier collected a charge it was not entitled to and then refused to return it. The "without justification" standard is easily met when the charge itself was improper from inception — there is no legitimate basis to retain it.

52. Upon information and belief, Lowe's has never posted a refund policy placing Lowe's

customers on notice that the customers would not be entitled to a refund of the inflated consumer product prices related to the IEEPA tariffs, in the event Lowe's received a refund for the unconstitutional tariffs.

53. Ohio R.C. 1345.03(A) makes Lowe's knowing retention of and refusal to refund its customers the excess mounts they paid under the illegal IEEPA tariff regime, but refunded to Lowe's by the U.S. Government, unconscionable as a matter of law.

54. Ohio Courts have held that substantially similar conduct by a supplier for its failure to provide refunds owed to consumers constitutes a deceptive act under the CSPA. See, e.g., *State ex rel. Ohio AG v. Foster*, 2013 Ohio Misc. LEXIS 10762 (2013), *State v. Stephens Inv. & Fin. Servs*., 2011 Ohio Misc. LEXIS 17160 (2011).

55. The OCSPA is a remedial statute designed to protect consumers and is to be liberally construed in their favor. *Price v. Evans Auto. Repair, Inc*., 2024-Ohio-5108 (2024); *Einhorn v. Ford Motor Co*., 48 Ohio St. 3d 27 (1990). Lowe's retention of funds that rightfully belong to Plaintiff and the consumer Class Members undermines the fairness and transparency that the OCSPA seeks to ensure in consumer transactions.

56. Lowe's unfair and deceptive practices were willful, as Lowe's possessed actual knowledge that it was raising consumer prices in response to tariff costs while simultaneously pursuing government refunds for those same costs, and affirmatively chose not to disclose this dual recovery strategy to its customers.

57. Plaintiff and the Class Members were damaged as a proximate result of Lowe's unfair and deceptive practices, in an amount equal to the tariff cost component embedded in the prices they paid.

58. By engaging in the foregoing conduct, Lowe's has engaged in unfair competition or unfair or deceptive acts in violation of Ohio Rev. Code Ann. §§ 1345.01 et seq. (Ohio Consumer Sales Practices Act), with respect to Class Members' Lowe's purchases made in Ohio and/or Lowe's purchases by Ohio residents.

59. Pursuant to R.C. § 1345.09, Plaintiff and Ohio Class Members are entitled to:

a. Rescission of the consumer transactions and a full refund of the tariff cost components paid, or, in the alternative, actual economic damages in an amount to be determined at trial;

b. Because Lowe's violations were willful within the meaning of R.C. § 1345.09(B),

noneconomic damages of not more than $5,000 per violation;

c. An injunction, pursuant to R.C. § 1345.09(D), prohibiting Lowe's from engaging in the deceptive and unfair acts and practices described herein;

d. Reasonable attorneys' fees pursuant to R.C. § 1345.09(F)(2); and

e. Such other relief as the Court deems appropriate.

60. Plaintiff and the Class Members are entitled to actual damages, injunctive relief, attorneys' fees, and such other relief as the Court deems appropriate.

**COUNT II**

***Quasi Contract / Unjust Enrichment***

*(On Behalf of Plaintiff and the Class)*

61. Plaintiff incorporates the foregoing allegations in this complaint as if fully set forth herein.

62. As described herein, Defendant charged Plaintiff and each member of the proposed class tariff surcharges when they purchased Defendant's products. By collecting these tariff surcharges, Defendant received and knowingly and willingly accepted a direct benefit at Plaintiff's and the members of the proposed Class' expense. The Supreme Court has determined that the tariffs were unlawful and the Class conferred a benefit upon Lowe's in the form of the inflated prices they paid on a wide array of goods subject to the IEEPA tariffs. These inflated prices were caused by Lowe's attempt to pass on part of the costs of the IEEPA tariffs.

63. It would be unjust for Defendant to retain tariff surcharges to cover the expense of the subject tariffs when Defendant is entitled to a refund for the subject tariffs paid.

64. Defendant's unjust conduct was the proximate cause, and a substantial factor, in causing Plaintiff and the members of the proposed Class's losses and damages

65. Under the circumstances detailed in this Complaint, equity requires that Lowe's pay and return to Plaintiff and the Class any IEEPA tariff costs passed through to customers, the

amount of which will be proven at trial.

## COUNT III

***Money Had and Received***

*(On Behalf of Plaintiff and the Class)*

66. Plaintiff incorporates the foregoing allegations in this complaint as if fully set forth herein.

67. Lowe's received money from Plaintiff and from each Member of the proposed Class in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

68. Lowe's received this money for the purpose of repaying itself part of the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on imported goods.

69. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization and were unlawful.

70. The money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiff and to each Member of the proposed Class.

71. Defendant has not returned the money.

72. In equity and good conscience, Lowe's should not be permitted to retain the funds consumers paid above and beyond what they would have absent the IEEPA tariffs. The money belongs to Plaintiff and the Class, and Lowe's is obligated to return it. This Count is pleaded in the alternative to Count II. While Count II (Unjust Enrichment) addresses the inequity of Lowe's retention of consumer overcharges already collected, this Count more particularly addresses Lowe's receipt and/or anticipated retention of government refund proceeds that, in equity, represent a return of money that was economically borne by Members of the Classes, not by Lowe's.

## COUNT IV

***Injunctive Relief Under Federal Rule Of Civil Procedure 23(b)(2)***

*(On Behalf of Plaintiff and the Class)*

73. Plaintiff incorporates the foregoing allegations in this complaint as if fully set forth herein.

74. Federal Rule of Civil Procedure 23(b)(2) permits class certification where the party

opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

75. Lowe's has acted and continues to act on grounds generally applicable to the Class. Specifically, Lowe's has: (a) uniformly passed through a portion of the IEEPA tariff costs to all customers purchasing tariffed goods; (b) uniformly failed to establish any customer refund mechanism for the tariff costs it passed on; and (c) has failed to commit to returning to its customers any tariff refunds it is entitled to receive rather than retaining those tariffs to benefit only Lowe's.

*76.* Absent injunctive relief, Lowe's will retain all ill-gotten increased profits from unlawful tariffs and/or government tariff refunds — which may approach one billion dollars — without compensating the consumers who actually bore a substantial portion of the economic burden of those tariffs. This harm is imminent, as the Court of International Trade has already issued a refund order and refund payments are anticipated imminently. See *Atmus, supra.*

77. Plaintiff and the Class will suffer irreparable harm absent injunctive relief. Monetary damages alone may be inadequate to remedy the harm because: (a) the refund proceeds may be commingled with general corporate assets making tracing difficult or impossible; (b) future price reductions, as vaguely promised by Lowe's, do not constitute adequate legal relief for past economic injuries; and (c) the diffuse nature of the harm across millions of consumers creates practical barriers to full monetary recovery.

78. Plaintiff therefore requests that the Court, pursuant to Federal Rule of Civil Procedure 23(b)(2), enter injunctive relief:

a. Enjoining Lowe's from retaining, disbursing, or otherwise dissipating any IEEPA tariff refunds received from the U.S. government, pending resolution of this litigation;

b. Requiring Lowe's to establish and maintain an identifiable, segregated account, i.e. constructive trust, to hold all IEEPA tariff refunds received from the U.S. government pending further order of this Court;

c. Requiring Lowe's to disclose to this Court and to Class Members the total amount of IEEPA tariff refunds it has received or anticipates receiving from the U.S. government;

d. Requiring Lowe's to establish a fair and equitable refund mechanism through which affected Class Members may recover the tariff cost component of the inflated prices they paid during the Class Period.

79. The proposed injunctive relief is appropriate respecting the Class as a whole because Lowe's 's conduct and the requested relief apply uniformly and without differentiation to all Class Members.

**PRAYER FOR RELIEF**

Accordingly, Plaintiff requests that the Court provide the following relief:

80. Determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23 and direct that notice of this action be given to Members of the Class;

81. Enter an Order declaring that Lowe's actions violate the Ohio Consumer Sales Practices Act and/or equitable principles underlying the Ohio claims under the Ohio Consumer Sales Practices Act;

82. Award Plaintiff and the Class damages or restitution in the amount to be determined at trial that Lowe's was unjustly enriched by the tariff-cost component of prices charged to Class Members;

83. Award Plaintiff and the Ohio Class actual damages, and such other statutory relief as is available, pursuant to the Ohio Consumer Sales Practices Act, in an amount to be determined at trial;

84. Enter a declaration that Lowe's is obligated to return to Plaintiff and proposed Class Members all IEEPA duties passed on to customers in the form of higher prices on products, with interest;

85. Enter injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2) as described in Count IV, including enjoining Lowe's from retaining government tariff refunds pending resolution of this litigation and requiring Lowe's to establish a consumer refund mechanism;

86. Enter injunctive relief pursuant to the Ohio Consumer Sales Practices Act, R.C. § 1345.09(D), prohibiting Lowe's from continuing to engage in the deceptive and unfair acts and practices described herein with respect to Ohio consumers;

87. Award Plaintiff and Class Members rescission, actual damages, and non-economic damages pursuant to R.C. § 1345.09, including attorneys' fees;

88. Award prejudgment and post-judgment interest;

89. Award Plaintiff reasonable attorneys' fees and costs;

90. Award Plaintiff and the putative Class Members damages in an amount in excess of $75,000.00.

91. Grant such other equitable relief as the Court may deem just and proper.

**DEMAND FOR A JURY TRIAL**

In accordance with Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ George W. Cochran*
George W. Cochran (0031691)
1981 Crossfield Circle
Kent, Ohio 44240
Telephone: (330) 607-2187
lawchrist@gmail.com

Attorney for Plaintiff James McCoy and
the Putative Class